MANUEL CHICO DE LA ROSA ET AL., Plaintiffs and Appellees, v. JOHN V. GOETZ, Defendant and Appellant.

No. R-62-234.     Decided May 7, 1964.

*Héctor Reichard* and *Carlos D. Vázquez* for appellant. *José Veray, Jr.,* for appellees.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

This is an action for damages resulting from an automobile accident which occurred on highway No. 459 leading from Aguadilla to Isabela, Puerto Rico. On August 26, 1960, around 10:30 P.M., defendant was driving his automobile along that highway in the direction of Aguadilla to Isabela. The automobile and a "Vespa" motorcycle collided, as a result of which the driver of the motorcycle was killed.

The Superior Court concluded that the accident was due to the combined negligence of defendant and the deceased and imputed 70 percent of the negligence to the former and 30 percent to the latter. It estimated the damages sustained by plaintiffs at $20,000, and after deducting the sum corresponding to the proportion of negligence attributed to the deceased, it ordered defendant to pay to plaintiffs the sum of $14,000, plus the costs and $1,000 for attorney's fees. In order to reach the aforementioned apportionment of liability, the trial court concluded that the deceased was driving the motorcycle along the left-hand side of the road and that defendant was driving his automobile at excessive speed and under the influence of intoxicating liquor.

Defendant-appellant assigns the following errors: (1) that the Superior Court erred in holding that defendant was driving his automobile at excessive speed; (2) that it erred in holding that he was driving under the influence of intoxicating liquor; (3) that it erred in holding defendant liable, inasmuch as the proximate cause of the accident was the negligence of the deceased in driving his motorcycle along the left-hand side; (4) that it erred in imputing 70 percent of the negligence to defendant; and (5) in ordering defendant to pay attorney's fees. Since the first four errors refer

to the weighing of the evidence made by the trial court we will discuss them jointly.

We have examined closely the lengthy transcript of the evidence (344 pp.), the photographic evidence, the briefs and other documents which appear in the record. The case has a tenor which is not common. The deceased, Israel Chico Vera, was the brother of police sergeant Chico, who was in charge of traffic matters in Aguadilla, the jurisdiction where the accident took place, at the time of its occurrence. The oral evidence of plaintiffs consisted of the testimonies of the following persons:

(a) Francisca Cruz Jiménez, who lived near the place of the occurrence and at the time of the accident had already gone to bed and was falling asleep when she heard the crash. She dressed and went down to the road to see what happened. Her testimony hardly sheds any light in the case.

(b) Héctor Calero. He is a detective. He testified that that evening he was in a house near the scene of the occurrence and also heard the crash. He went down to see what had happened.

(c) Marcelino Pérez Hidalgo. He is also a detective. He was not around, but was patrolling in a police vehicle and was notified of the accident. He went there and personally took part in the investigation.

(d) Israel Soto. A policeman. He also arrived at the scene of the accident after its occurrence. He participated in the investigation thereof.

(e) Laureano Correa Hernández. He is also a policeman. He also arrived at the scene after the occurrence of the accident. He took pictures.

(f) Evaristo Reyes Lebrón. He is also a policeman. He also arrived at the scene of the accident after the occurrence. He took part in the investigation.

(g) Manuel Chico de la Rosa. He is the father of the deceased. He did not witness the accident either.

(h) Mercedes Vera. She is the mother of the deceased. She was not at the scene of the accident either.

Defendant's evidence consisted of the testimony of the driver of the automobile, who is defendant himself, John V. Goetz; of the testimony of the expert in safety measures of Ramey Air Base, William Malone; and of the testimony of Sergio Vélez González, the district attorney who investigated the case. The evidence shows the following:

The deceased, Israel Chico Vera, was 24 years of age at the time of his death; he had pursued studies up to the fifth or sixth grade in school; he lived with his father and worked with him in a business repairing and painting bicycles. He earned, according to his father, $20 a week of which, according to his mother, he gave her $5 a week. He had other brothers 13, 17 and 18 years old who at this time must be 16, 20 and 21 years, respectively.

The night of the accident the deceased was driving, without having a license, a motorcycle along the aforementioned highway 459 in the direction of Isabela to Aguadilla. After rounding a curve he was driving on the left-hand side of the road. At that moment defendant was driving his car in the opposite direction, namely, from Aguadilla to Isabela. They collided. Defendant testified that he was driving on his right-hand side at a speed of from 25 to 30 miles per hour. The place of the impact as well as the expert evidence confirms that testimony of defendant. The automobile was damaged on the right front headlight and on its right front fender. The glasses which fell to the ground and the other evidence pointing to the place of the impact showed that it occurred on the right-hand side of the road. The evidence is uncontradicted on this. Expert Malone testified that, taking into consideration the thickness of the metal of the fender of the automobile, the dents sustained by the latter and other pertinent factors, he could assert that the total speed of both

vehicles when they collided would be from 30 to 35 miles per hour. It may be assumed that if the automobile was travelling at 25 or 30 miles per hour, the motorcycle could have been traveling at about 10 miles per hour, wherefore, as has been seen, the weighing by the expert agrees with the testimony of the driver of the vehicle. There is no evidence to support the conclusion that the automobile was traveling at excessive speed; rather, it was otherwise.

■■ On the alleged state of intoxication. Immediately after the accident detective Marcelino Pérez Hidalgo asked defendant to have a blood sample taken, which he did. Plaintiffs did not present in evidence the result of that test. In situations such as this, the Law of Evidence provides that "if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust." 32 L.P.R.A. § 1679 *in fine*. Furthermore, that Act also provides that "evidence wilfully suppressed would be adverse if produced," and that "higher evidence would be adverse from inferior being produced." 32 L.P.R.A. § 1887(5) and (6).

However, plaintiffs introduced the testimony of detective Pérez Hidalgo who, upon being asked as follows, "Do you know whether or not Mr. Goetz, in your opinion, was in a state of intoxication?", he said, "Well, in my judgment, that is, my opinion, I figured that he had been drinking, but he was not drunk." Tr. Ev. 13. There was not a single witness who saw the defendant driving the car shortly prior to the accident. The conclusions on excessive speed and state of intoxication are not supported by the evidence. Defendant's own testimony is exceptionally frank and straightforward. Tr. Ev. 239 *et seq.* It shows an honest attitude which those of us who spend a great part of our working hours reading transcripts of evidence miss.

■ ■ On the record which we have read we must conclude that this was an unfortunate accident, the proximate cause of which was the negligence or unskillfulness of the deceased in driving his vehicle along the left-hand side of the road, especially in a place where there are curves which increase considerably the risk of colliding with another vehicle traveling in the opposite direction. Although normally we uphold the weighing of the evidence made by the trial courts, we are compelled to reverse when there is bias or manifest error. In the case at bar the latter was committed. *Commonwealth* v. *Cía. de Ferrocarriles*, 83 P.R.R. 565, 568 (1961); *Sanabria* v. *Heirs of González*, 82 P.R.R. 851, 965 (1961). The first four errors assigned were committed and, consequently, we need not discuss the fifth and last error.

For the reasons stated, the judgment appealed from will be reversed and another rendered dismissing the complaint in this case, with award of costs.